UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ELIZABETH SHOLLENBERGER, :
              Plaintiff, :
v. :
               :
NEW YORK STATE UNIFIED COURT : **OPINION AND ORDER**
SYSTEM; JANET DIFIORE, in her official :
capacity as the Chief Judge of the State of New : 18 CV 9736 (VB)
York; and LAWRENCE K. MARKS, in his :
individual capacity and in his official capacity :
as the Chief Administrator of the New York :
State Unified Court System, :
              Defendants. :
----------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Elizabeth Shollenberger, a judge suspended from the White Plains City Court in 2018, brings this action against defendants Chief Judge Janet DiFiore in her official capacity, and Chief Administrative Judge Lawrence Marks in his individual and official capacities (collectively, the "individual defendants"), and the New York State Unified Court System, asserting claims pursuant to the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1). Plaintiff claims defendants discriminated against her because of her disabilities and seeks damages and reinstatement to the bench.

      Before the Court is the individual defendants' motion to dismiss the amended complaint in its entirety as to Chief Judge DiFiore, and in part as to Judge Marks, pursuant to Rule 12(b)(6).[1] (Doc. #39).

      For the reasons set forth below, the motion is DENIED.

---

[1] The individual defendants also initially moved to dismiss the amended complaint pursuant to Rule 12(b)(1) but abandoned that argument in their reply brief.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.      Plaintiff's Judicial Appointment and Health Issues

In December 2016, the White Plains Common Council appointed plaintiff to a ten-year term as a judge on the City Court, which is part of the Ninth Judicial District in the New York State Unified Court System. This was plaintiff's first judicial appointment. One of four City Court judges, plaintiff would preside over traffic court, civil disputes, landlord-tenant and other housing cases, and certain criminal matters. As a part of the appointment, plaintiff was required to retire from the practice of law.

Plaintiff has several serious health issues, including (i) pulmonary hypertension (high blood pressure in the lungs); (ii) chronic obstructive pulmonary disease (lung disease); (iii) immune thrombocytopenia (blood clotting disorder); (iv) lymphedema (swelling) in her legs resulting from a fall on a subway platform in 1989; (v) a fungal infection in her leg from the 1989 accident; (vi) lack of strength in her legs from the same accident; and (vii) obesity. To treat these conditions, plaintiff takes prescription medications, including antibiotics and antifungal drugs, which "frequently cause stress to Plaintiff's gastrointestinal system, requiring her to have quick access to the restroom." (Doc. #31 ("Am Compl.") ¶ 25). Plaintiff also struggles with her mobility. She uses a walker or a motorized scooter, carries an oxygen concentrator to assist her breathing, and must frequently stop to rest.

After plaintiff was sworn in as a judge on January 3, 2017, she claims she unsuccessfully sought certain accommodations. According to plaintiff, White Plains City Court Chief Clerk Ellen Byrne refused to give plaintiff access to the judges' restroom. Byrne allegedly instructed plaintiff to use the restroom located off the jury deliberation room and, without consulting plaintiff, had handrails installed in that restroom. Plaintiff claims she objected to using that restroom because it was a long walk from her chambers and certain courtrooms. Further, the restroom is not private or discrete, as it is located in a conference room where drug treatment meetings and other confidential conferences occurred. Plaintiff also alleges she asked for railings to be installed along the steps up to the judge's seat in two courtrooms, but those railings were not fully installed for more than eighteen months. Plaintiff claims in the interim, court officers refused to help her up the steps. According to plaintiff, she presided from a table set up on the courtroom floor.

During the first four months of plaintiff's judgeship, she was hospitalized three times, once for a leg wound infection and twice for pneumonia. During that time, she worked fifty-two days and took sick leave for thirty-six days.

II. Plaintiff's First Suspension

On May 1, 2017, after the afternoon court session had ended and plaintiff was alone in the courtroom, plaintiff alleges she "suddenly and urgently needed to use the restroom" and "defecated in a plastic-lined wastepaper basket." (Am. Compl. ¶ 58). Plaintiff states she "removed and tied the plastic liner bag and double-bagged it for disposal, but a small stain about the size of a quarter was visible on the carpet." (Id.). Plaintiff claims she informed a court employee additional cleaning was needed.

In response, court employees allegedly "mounted yellow police tape to cordon off both entrances" to the courtroom through May 2, 2017. (Am. Compl. ¶ 61). That morning, plaintiff conducted her court proceedings in another courtroom and the clerk assisting plaintiff allegedly wore bright yellow rubber gloves such as those used for dishwashing. Plaintiff says that when she asked the clerk why she was wearing rubber gloves, the clerk replied, "For my health." (Id. ¶ 61). That afternoon, plaintiff saw three people entering the cordoned off courtroom wearing what appeared to be full hazardous material (hazmat) suits and breathing masks. According to plaintiff, there was no legitimate reason to don such equipment.

Later on May 2, 2017, plaintiff received a hand-delivered order from Judge Marks reassigning all judicial matters pending before her and directing that no additional matters be assigned to her. (See Doc. #40-1). An accompanying letter notified plaintiff that pursuant to Part 113 of the Rules of the Chief Administrative Judge, Judge Marks was instituting a medical investigation after being advised plaintiff had been unable to fully perform her judicial duties in recent months. (See Doc. #40-2). The letter also stated the May 1 incident raised serious issues of public health and operational safety. (Id.).[2]

Part 113 authorizes the chief administrator to make "such inquiry as is necessary to ascertain the reason for [a judge's] . . . inability to perform, the prognosis for recovery, and the time the judge . . . is expected to be able to return to full performance." N.Y. Code Rules & Regs., tit. 22, § 113. The rule permits the chief administrator, "after consultation with the Presiding Justice of the appropriate Appellate Division," to "direct a judge or justice who has

---

[2] The individual defendants submitted the May 2 order and the May 2 letter in support of their motion to dismiss. The Court may consider these documents in deciding the pending motion as documents incorporated by reference or documents integral to the amended complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

4

been unable to fully perform his or her duties for an extended period of time to be examined by a physician selected by the Chief Administrator to ascertain the physical or mental condition of the judge or justice and the prognosis for his or her return to full performance." Id.

According to plaintiff, Judge Alan D. Scheinkman, then-Administrative Judge of the Ninth Judicial District, told plaintiff she was prohibited from attending a scheduled judicial training session during her suspension.

III.     Alleged Difficulties During Plaintiff's First Suspension

The first suspension remained in effect until July 16, 2018. Plaintiff was hospitalized twice during this fourteen-month period, from June 6 to 8, 2017, and from June 21 to August 11, 2017, with a case of shingles. She remained in in-patient rehabilitation until September 16, 2017. Plaintiff alleges she was otherwise in good health.

During the suspension, defendants made several demands to evaluate plaintiff's health.

First, defendants allegedly required plaintiff to provide all her hospital and physician records from the first three quarters of 2017. Plaintiff claims she provided nearly 1,000 pages of unredacted records.

Second, defendants allegedly asked plaintiff to submit to two medical examinations by defendants' chosen physician, Dr. Hernandez, on May 24, 2017, and March 12, 2018. Plaintiff alleges at the end of both examinations, Dr. Hernandez told plaintiff he would recommend that she be permitted to return to work and expressed surprise she had not returned already.

Third, defendants allegedly required plaintiff to submit to an examination by defendants' chosen pulmonary specialist, Dr. Shulman, whose offices are in Nassau County. After the examination on March 8, 2018, Dr. Shulman allegedly told plaintiff he would recommend that she be permitted to return to work.

5

Fourth, defendants allegedly required plaintiff to submit to two psychiatric examinations by defendants' chosen psychiatrist, Dr. Portnow, on June 6, 2017, and March 28, 2018. The first examination ended early when plaintiff's oxygen concentrator malfunctioned. After the second examination, Dr. Portnow allegedly told plaintiff he would recommend that she be permitted to return to work.

According to plaintiff, defendants sought to prevent her from returning to work by making "overly burdensome demands for duplicative medical examinations." (Am Compl. ¶ 104). Although plaintiff says she complied with every requirement, plaintiff alleges defendants repeatedly asked for new or additional certifications from plaintiff's doctors in an effort to delay examinations by defendants' doctors. For instance, the March 12, 2018, examination by Dr. Hernandez was originally scheduled for November 16, 2017, and delayed until plaintiff scheduled a further examination with her own pulmonary hypertension specialist. The March 8, 2018, examination by Dr. Shulman was scheduled only after plaintiff's pulmonary hypertension specialist submitted further certification as to plaintiff's health. Moreover, plaintiff alleges defendants selected a pulmonologist in Nassau County in order to inconvenience and harass plaintiff. Plaintiff also alleges defendants needlessly subjected her to a mental health evaluation despite that all her difficulties stemmed from her physical health problems.

Plaintiff further alleges during the first suspension, court employees "publicize[d] false information" about her, and defendants "either tolerated or failed to correct this harassment." (Am. Compl. ¶ 111). For instance, Judge Marks's May 2, 2017 order suspending plaintiff was allegedly leaked to the press, and a month later, a photograph of the suspension order was published online. Another article, published in the New York Post on June 22, 2017, "included a host of wildly inaccurate, crass, and hateful allegations, quoting and attributing unnamed court

employees." (Id. ¶ 113). Moreover, on March 5, 2018, an attorney filed an affirmation on the public court docket of an action in Supreme Court, Westchester County, swearing he "ha[d] been advised by the White Plains City Court that Ms. Shollenberger is no longer a judge in the White Plains City Court." (Id. ¶ 125). According to plaintiff, the attorney sent a package for plaintiff to the court, and after informing a court employee, the employee told the attorney the court had no forwarding address for plaintiff. Plaintiff alleges she never received the package.

Plaintiff sent letters to defendants through her attorney on June 29, July 24, and October 2, 2017, requesting they curb employee comments like those described above. Plaintiff also asked defendants to meet with her and hear her account of the events that led to her suspension and make reasonable accommodations for her return. Defendants refused to do so until Judge Marks's investigation was complete but told plaintiff that defendants' Office of the Inspector General would conduct a confidential investigation. Plaintiff sat for a two-hour interview with that office but alleges she was later improperly denied access to the final report.

IV. Reinstatement and Second Suspension

Plaintiff was reinstated on July 16, 2018. Defendants allegedly issued no formal determination following Judge Marks's Part 113 investigation.

Representatives of the court system allegedly met with plaintiff in May, June, and July 2018 to discuss her return to active judicial duty. According to plaintiff, the parties orally agreed the court would provide odor-free waste receptacles for plaintiff's discarded bandages and incontinence pads, and would better communicate about any future concerns.

On August 15, 2018, Judge Kathie Davidson, the Ninth Judicial District Administrative Judge, allegedly met with plaintiff and informed her that court employees had complained of unpleasant and offensive odors. Plaintiff replied that an odor can result from discarded bandages

7

used to cover her leg infection. According to plaintiff, despite the earlier agreement, the odor-free waste receptacles had not been placed in plaintiff's judicial chambers or the judges' restroom.

A few hours later, Judge Marks signed an order suspending plaintiff for a second time, which plaintiff received the following day. (Doc. #40-3).[3] Judge Marks's letter to plaintiff states he was "advised that you have not been able to fully perform your judicial duties in recent weeks, due to what appear to be medically-related conditions," and cited concerns for the health and safety of court employees. (Am. Compl. ¶ 168). Judge Marks also ordered further medical evaluations. On October 16, 2018, plaintiff submitted to another medical examination—this time, with Dr. Keolamphu, who shares an office and medical practice with Dr. Hernandez.

To date, the second suspension remains in effect. Throughout the relevant time period, plaintiff has continued to receive her full salary and benefits.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, a complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II. Analysis

As relevant here, plaintiff brings ADA claims for prospective injunctive relief against Chief Judge DiFiore and Judge Marks sued in their official capacities (Counts 1 to 3), and NYSHRL claims for damages against Judge Marks sued in his individual capacity (Counts 7 and 8). The ADA and NYSHRL claims are discussed in turn.

    A. ADA Claims

The individual defendants argue plaintiff's ADA claims cannot proceed because she fails plausibly to allege their conduct violated the ADA.

The Court disagrees.

"[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law" under the well-known exception set forth in Ex parte Young, 209 U.S. 123 (1908). State Emp. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation omitted). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an

---

3     The Court also considers this order in deciding the pending motion. See Chambers v.

ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation marks and brackets omitted). Plaintiff must also name defendants in their official capacities who have "the authority to provide the requested relief." Ross v. New York, 2016 WL 626561, at *4 (S.D.N.Y. Feb. 16, 2016) (quoting Siani v. State Univ. of N.Y. at Farmingdale, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014)). To state such a claim, a plaintiff need only allege the defendant has responsibility for the alleged conduct and the ability to redress the alleged violations. See CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 99 (2d Cir. 2002) ("Ex Parte Young allows for jurisdiction over the Individual Defendants inasmuch as it is in the performance of their duties that there may be an ongoing violation of federal law.").

The individual defendants do not dispute plaintiff properly alleges an ongoing violation of federal law. Nor do they challenge whether plaintiff properly seeks prospective injunctive relief or whether the individual defendants can redress the alleged violation. Rather, they argue plaintiff fails to allege Chief Judge DiFiore and Judge Marks violated plaintiff's rights under the ADA by personally discriminating, interfering, or retaliating against plaintiff. However, they do not point to a single case—and the Court is aware of none—that requires a plaintiff to allege anything more than that a defendant sued in his or her official capacity for injunctive relief had the authority to control and correct the alleged violation.

Accordingly, plaintiff's ADA claims against Chief Judge DiFiore and Judge Marks for injunctive relief shall proceed.

---

Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

B.   NYSHRL Claims

The individual defendants argue plaintiff fails to state a hostile work environment claim or a retaliation claim under the NYSHRL against Judge Marks in his individual capacity.[4]

The Court disagrees.

1.   Hostile Work Environment Claim

Employment discrimination claims under the NYSHRL are subject to additional requirements than those brought only under federal law. To adequately plead such a claim, a plaintiff must allege "that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and . . . that a specific basis exists for imputing the objectionable conduct to the employer." Fox v. Costco Wholesale Corp., 918 F.3d 65, 74, 76 (2d Cir. 2019) (applying same standard for hostile work environment claims under NYSHRL and ADA). In addition to alleging these elements, to proceed against an individual defendant as an employer under the NYSHRL, a plaintiff must allege the individual has an "ownership interest or any power to do more than carry out personnel decisions made by others," Heskin v. Insite Advert., Inc., 2005 WL 407646, at *24 (S.D.N.Y. Feb. 22, 2005), and "that the employer acquiesced in the discriminatory conduct or subsequently condoned it." Hill v. Children's Vill., 196 F. Supp. 2d 389, 400–01 (S.D.N.Y. 2002). Condonation contemplates a knowing, after the fact forgiveness or acceptance of an offense, and "calculated inaction in response to discriminatory conduct may [also] . . . indicate

---

[4] Plaintiff also brings disability discrimination claims under the NYSHRL against Judge Marks on several other theories, namely, "refusing to grant reasonable accommodations for Plaintiff's known disabilities, creating and tolerating a hostile work environment, suspending Plaintiff from performing her duties, requiring prohibited medical examinations and inquiries of her, and repeatedly moving the goalposts." (Am. Compl. ¶ 219). Because the individual defendants do not move to dismiss the disability claims brought pursuant to these theories, the Court will not address their viability here.

condonation." Id. at 401. "[C]ondonation requires actual notice." Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007).

Plaintiff plausibly alleges she was subject to harassment, both at the courthouse and during her suspension, that is sufficiently severe or pervasive to support her hostile work environment claim. These allegations include court employees' delayed installation of handrails in the courtroom; their refusal to assist plaintiff before the installation of the handrails; their refusal to allow plaintiff access to the judges' restroom; their direction to use the conference room bathroom instead; their decision to barricade the courtroom with police tape; their allegedly unnecessary use of hazmat suits, and their allegedly false statements to the press and at least one local attorney. Plaintiff also alleges she informed her supervisors, including Judge Marks, about this objectionable conduct, but no one took action.

Furthermore, despite the individual defendants' argument to the contrary, plaintiff plausibly alleges both additional elements required for her state law claim to proceed against Judge Marks. First, she alleges Judge Marks had the power to do more than carry out personnel decisions made by others, as demonstrated by his two orders suspending her. Second, she alleges Judge Marks was aware of the discrimination against her and either knowingly accepted or subsequently condoned it. Plaintiff alleges she communicated her concerns to defendants in letters dated June 29, July 24, and October 2, 2017, and March 7, 2018. Defendants, including Judge Marks, allegedly refused to meet with her or hear her account of the events. Plaintiff also alleges she had discussions with court supervisors in May, June, and July 2018 concerning requested arrangements and accommodations. Moreover, plaintiff offers facts suggesting that despite knowing of the harassment, Judge Marks refused plaintiff's repeated requests to have a discussion and refused to restrain court employees from making public remarks about her.

These allegations are sufficient to permit plaintiff's NYSHRL hostile work environment claim against Judge Marks to proceed.

2. Retaliation Claim

The individual defendants argue plaintiff's NYSHRL retaliation claims fails to identify any retaliatory act by Judge Marks, or any causal link between such an act and a purportedly protected activity.

The Court disagrees.

To state a retaliation claim, a plaintiff must allege "(1) [she] engaged in [a protected] activity . . . ; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (applying same legal standard to retaliation claims under NYSHRL, ADA, and Title VII). To qualify as an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67–68 (2006).

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (emphasis added). While the Second Circuit has not drawn a bright line to define temporal proximity, the Circuit has found a connection of a few months may suffice. Treglia v. Town of Manlius, 313 F.3d at 720.

13

Drawing all inferences in plaintiff's favor at this early stage of the case, the Court finds plaintiff has sufficiently alleged an adverse employment action—namely, at least, that Judge Marks required her to undergo unnecessary and repetitive medical examinations, see Baum v. Rockland County, 337 F. Supp. 2d 454, 474 (S.D.N.Y. 2004), aff'd, 161 F. App'x 62 (2d Cir. 2005) (summary order), and imposed a second, indefinite suspension, see Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 73.

Plaintiff also sufficiently alleges a causal connection between a protected activity and these adverse employment actions. Plaintiff claims she communicated her concerns to defendants and sought reasonable accommodations in letters dated June 29, July 24, and October 2, 2017, and March 7, 2018, and during meetings in May, June, and July 2018. Seeking a reasonable accommodation for a disability is a protected activity under the NYSHRL. See Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir. 2002). The temporal proximity between those letters and meetings and plaintiff's repeat medical examinations in March 2018 and her suspension in August 2018 adequately supports causation. Indeed, even if several months passed between the alleged protected and retaliatory acts, that lapse in time would not, as a matter of law, be cause for dismissal at this point.

The individual defendants argue plaintiff has not plausibly alleged a causal connection between a protected activity and her second suspension, because Judge Marks lifted plaintiff's first suspension on July 16, 2018, which defendants analogize to an interim promotion or positive performance review that severed any causal link between a protected activity and an adverse action. Not necessarily so. Judge Marks's actions, on the whole, could still amount to a condonation or tacit acceptance of the alleged discrimination. See E.E.O.C. v. Suffolk Laundry Servs., Inc., 48 F. Supp. 3d 497, 522 (E.D.N.Y. 2014) (taking some proactive measures in

response to complaints of discrimination does not prevent a conclusion that the actions, viewed as a whole, amounted to discrimination). The individual defendants rely on two Second Circuit summary judgment cases that supposedly support this severance theory, but both cases primarily turn on the lack of temporal proximity, not the plaintiffs' interim promotion or positive performance review. See Rosinski v. Am. Axle & Mfg., Inc., 402 F. App'x 535, 537–38 (2d Cir. 2010) (summary order); Dayes v. Pace Univ., 2 F. App'x 204, 208 (2d Cir. 2001) (summary order). Here, evidence may yet demonstrate sufficient temporal proximity. Moreover, it is questionable whether returning to active duty from a fourteen-month suspension qualifies as a promotion or positive performance review.

Accordingly, plaintiff's NYSHRL retaliation claim against Judge Marks shall proceed.

## CONCLUSION

The motion to dismiss is DENIED.

By July 12, 2019, the individual defendants shall answer the amended complaint.

The Clerk is directed to terminate the motion. (Doc. #39).

Dated: June 28, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge